**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

In the Matter of Arbitration between

ZURICH AMERICAN INSURANCE COMPANY, AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, and AMERICAN ZURICH INSURANCE COMPANY

Petitioners,

and

BLUE DOT SERVICES, INC.

Respondent.

Case No. 08CV2273 TG

FILED: APRIL 21, 2008
JUDGE MANNING
MAGISTRATE JUDGE COX

**PETITION TO CONFIRM ARBITRATION AWARD**

Petitioners Zurich American Insurance Company, American Guarantee and Liability Insurance Company, and American Zurich Insurance Company (collectively, "Zurich") allege:

**PARTIES**

1. Zurich American Insurance Company is an Illinois corporation engaged in the insurance business with a statutory home office and a principal place of business located at 1400 American Lane, Schaumburg, Illinois 60196.

2. American Guarantee and Liability Insurance Company is a New York corporation engaged in the insurance business with a statutory home office located at One Liberty Plaza, 165 Broadway, 32nd Floor, New York, New York 10006 and a principal place of business located at 1400 American Lane, Schaumburg, Illinois 60196.

3. American Zurich Insurance Company is an Illinois corporation engaged in the insurance business with a statutory home office and a principal place of business located at 1400 American Lane, Schaumburg, Illinois 60196.

4. Respondent Blue Dot Services, Inc. ("Blue Dot") is a Delaware corporation with a principal place of business located at 125 South Dakota Avenue, Sioux Falls, South Dakota 57104.

**JURISDICTION**

5. This is a proceeding to confirm an arbitration award arising under Section 9 of the Federal Arbitration Act, 9 U.S.C.A. § 9. The arbitration was conducted in Chicago, Illinois.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

**PETITION TO CONFIRM ARBITRATION AWARD**

7. Zurich and Blue Dot entered into written agreements (the "Program Agreements") in connection with insurance policies that Zurich issued to Blue Dot insuring Blue Dot's employees and operations in multiple states.

8. The Program Agreements contain an agreement to submit to arbitration any dispute arising out of the interpretation, performance, or alleged breach of the Program Agreements. A copy of the relevant portions of one of the Program Agreements is attached as Exhibit A.

9. The arbitration agreement provides that a court having jurisdiction may confirm an award made pursuant to the arbitration.

10. On May 2, 2007, Zurich demanded arbitration of a dispute that arose between the parties. Through the arbitration, Zurich sought to recover more than $3,500,000 plus interest that Blue Dot owed Zurich under the Program Agreements for its insurance.

11. Pursuant to the arbitration agreement, Zurich appointed Michael S. Davis as an arbitrator. Blue Dot appointed John W. Borg as an arbitrator. The two arbitrators then appointed Richard L. White as umpire in accordance with the terms of the arbitration agreement. The parties agreed that the panel of arbitrators was properly constituted and that there were no objections to the arbitrators.

12. The arbitrators conducted a hearing on March 26, 2008. The parties each presented oral arguments and evidence at the hearing.

13. On April 18, 2008, the arbitrators, having conferred on the arguments and evidence presented, entered a final award in Zurich's favor in the total amount of **$3,904,763**. In the event that Blue Dot does not satisfy the final award by April 28, 2008, post-award interest shall accrue at a rate of nine percent per annum starting on the final award date. A copy of the final award is attached as Exhibit B.

14. As a result of the foregoing, Zurich is entitled to an order confirming the award, and that judgment be entered in conformity with that order, pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C.A. § 9.

**WHEREFORE**, Zurich requests that:

1. An order of this Court be made confirming the arbitrators' April 18, 2008 award; and

2. Judgment be entered in conformity with that order.

Dated: April 21, 2008

Respectfully submitted,

LOCKE LORD BISSELL & LIDDELL LLP

By /s/ Julie L. Young
Attorneys for Petitioners Zurich American Insurance Company, American Guarantee and Liability Insurance Company, and American Zurich Insurance Company

Steven T. Whitmer
Julie L. Young
LOCKE LORD BISSELL & LIDDELL LLP
111 South Wacker Drive
Chicago, Illinois 60606
Phone: 312.443.0254 (J. Young)
Fax: 312.896.6254 (J. Young)

08CV2273 TG
JUDGE MANNING
MAGISTRATE JUDGE COX

# EXHIBIT A

**H. Collateral (continued)**

Surrender of LOC

Your duty to provide Collateral will continue until We determine that the Collateral under this Agreement is no longer required. You understand and agree that this duty may continue after this Agreement terminates or is canceled.

**I. Audit**

An audit for the Program term stated in the Specifications will be conducted in accordance with the provisions of the Policy(ies). The adjustable elements of the Program will be adjusted based on the audited exposures. You will pay any additional premium due Us and We will pay any return premium due You within twenty (20) days of the audit billing date.

**J. Invalidity And Severability**

It is agreed that if any provision of this Agreement is found to be invalid or unenforceable by a governmental authority or court of law, all the other provisions of this Agreement shall remain valid and enforceable as if the Agreement did not contain the invalid or unenforceable provision. The invalid or unenforceable provision shall be amended to the minimum extent necessary to cure the invalid or unenforceable element and to preserve the original intent.

**K. Non-Waiver Of Rights**

Failure by either party to enforce any provision of this Agreement shall not be interpreted as a waiver of such provision or any other provision or any existing or future rights or privileges under this Agreement. The terms and conditions of this Agreement may be strictly enforced at any time despite any past or subsequent failure to do so by either party.

**L. Changes In This Agreement**

This Agreement shall not be waived, changed or assigned except by an Addendum, signed by a duly authorized representative of each party to this Agreement.

**M. Offset**

The parties under this Agreement each reserve the right to offset any undisputed balance due from one party to the other under this or any other Agreement entered into between Us, except as prohibited by law.

**N. Arbitration**

Any dispute arising out of the interpretation, performance or alleged breach of this Agreement, shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules and the following procedures:

1. Written notice requesting arbitration will be sent by the initiating party via certified or registered mail, return receipt requested, to the other party with the required copies to the AAA. The notice shall state the nature of the dispute, the amount involved, if any, and the remedy sought.

2. A panel shall be made up of three arbitrators. Each party shall select one arbitrator and the two selected arbitrators shall select an impartial third arbitrator with a commercial liability insurance background who shall preside at the hearing.

3. If either party fails to appoint its arbitrator within thirty (30) days of the delivery of the request, the other party shall send notice by certified or registered mail of its intention to appoint a second arbitrator and may do so within ten (10) days of the appointment notice date.

**N. Arbitration** (continued)

4. If the two arbitrators do not select the third arbitrator within thirty (30) days of their appointment, each arbitrator shall select three candidates, or a smaller number as agreed to by the two arbitrators, from a list of qualified candidates with a commercial liability insurance background provided by the American Arbitration Association. At the request of the two arbitrators, the American Arbitration Association shall select the third arbitrator from the list of candidates submitted.

5. Unless the parties under this Agreement agree otherwise, arbitration shall take place in Schaumburg, Illinois.

6. The arbitrators shall not limit, expand or modify the terms of this Agreement nor award damages in excess of compensatory damages under this Agreement, which damages would include without limitation any form of fine or multiple, punitive or exemplary damages and each party waives any claim to such excess damages. Confirmation of the award may be entered in any court having jurisdiction.

7. Each party shall pay the expense of its own arbitrator and equally pay the expenses of the third arbitrator and any other expenses of the arbitration proceeding (except witnesses). Each party shall pay its own costs of counsel and witnesses.

**O. Termination**

This Agreement will terminate by mutual written consent. We also reserve the right to terminate this Agreement if (1) there is a material change in Your ownership or (2) one or more of the Policy (ies) stated in the Specifications is canceled. Despite the termination of the Agreement, You are still liable for all Your obligations under this Agreement incurred up to the date of termination. It is understood and agreed by both parties that if billings are suspended at any point in time because all payments have been made, We still reserve the right to bill You at a future date for any and all claims subsequently reported, together with related expenses, provided the Aggregate Deductible, if any, has not been exhausted.

In the event of a mid-term termination of the Program, the Agreement will follow the cancellation provisions of the Policy(ies), subject to the minimum amounts for the Deductible Premium and the Aggregate Deductible, if applicable, stated in the Specifications.

In the event of a Default or a material change in Your financial condition, We may, at Our option, terminate the financing portion of the Program. The amount immediately due and payable to Us will be determined by Us using either of the following options: (1) all of Your obligations under this Agreement calculated using the most recent loss valuation plus IBNR; or (2) the full Standard Premium by converting the Program to a guaranteed cost rating plan using Our manual rates in effect as of the Program effective date.

**P. Governing Law And Jurisdiction**

This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York.

JUDGE MANNING
MAGISTRATE JUDGE COX

# EXHIBIT B

**In the Matter of Arbitration Between:**

| | | |
|---|---|---|
| **ZURICH AMERICAN INSURANCE COMPANY,** | ) | No. 51 195 Y 00644 07 |
| **Claimant,** | ) | Panel Members: |
| **and** | ) | Richard L. White<br>Michael S. Davis<br>John W. Borg |
| **BLUE DOT SERVICES, INC.,** | ) | |
| **Respondent.** | ) | |

**FINAL AWARD**

Arbitrators Richard L. White, Michael S. Davis and John W. Borg (collectively "the Panel"), being duly constituted, received oral argument and the presentation of evidence in connection with the arbitration held in this matter in Chicago, Illinois on March 26, 2008. Based upon the arguments, submissions and evidence presented to the Panel in connection with the submissions and hearing in this matter, the Panel hereby issues its Final Award as follows:

The majority of the Panel makes the following findings concerning certain of the issues presented by this arbitration.

1. **ZURICH AMERICAN INSURANCE COMPANY** and/or its affiliates ("Claimant" or "Zurich") provided certain insurance coverage to **BLUE DOT SERVICES, INC.** and/or its affiliates ("Respondent" or "Blue Dot") for the period 2/16/00 to 2/16/01 pursuant to certain insurance policies (the "00 Policies"). The 00 Policies are listed by policy number in the Specifications to Deductible Agreement

effective 2-16-2000 (the "00 Specifications"). The 00 Specifications set forth agreed terms and conditions under which Zurich agreed to provide and Blue Dot agreed to pay for the 00 Policies.

2. Zurich provided certain insurance coverage to Blue Dot for the period 2/16/01 to 2/16/02 pursuant to certain insurance policies (the "01 Policies"). The 01 Policies were listed by policy number on the Specifications to Incurred Deductible Agreement effective 2/16/2001 (the "01 Specifications")." The 01 Specifications set forth the agreed terms and conditions under which Zurich agreed to provide and Blue Dot agreed to pay for the 01 Policies.

3. No later than January 22, 2001, Zurich provided advance written notice of the renewal premium pursuant to which the 01 Policies were offered by Zurich as renewal of the 00 Policies. Such written notice was consistent in form with the provision of FSA § 627.4133 which calls for advance written notice of renewal premium.

4. Blue Dot contends that pursuant to FSA § 627.4133, it was entitled to have the premium for 01 Policies remain the same as the premium for the 00 Policies until the earlier of (i) 45 days after the notice of renewal premium or (ii) the binding of replacement coverage.

5. The 01 Policies were both a replacement for and a renewal of the 00 Policies. As a replacement of the 00 Policies, the 01 Policies were bound simultaneous

with the expiration of the 00 Policies, and thus there was no time period during which the 00 Policy premium provisions remained in effect during the 01 policy year.

6. While Blue Dot contends that pursuant to FSA § 627.4133 the 01 Policies should not be deemed to have been a replacement of the 00 Policies, this contention (even if it were correct, and we find that it is not correct) does not change the outcome of this arbitration. If the 01 Policies were deemed to be only a renewal of the 00 Policies, without being a replacement, and if FSA § 627.4133 were applicable in this circumstance, then the 01 Policies would have been subject to the same premium as the 00 Policies until 45 days after notice of the renewal premium. Because such notice is found to have been given no later than January 22, 2001, the 00 Policy premiums would have continued at most until March 9, 2001.

7. If the 00 Policies premiums were to have continued to be effective as to the 01 Policies until March 9, 2001, the evidence presented to the Panel does not support any different outcome than if the 01 Policies premium became effective on 2/17/01. This is because the only two identified differences in cost presented to the Panel between the 00 Policies and the 01 Policies, were (i) the attachment point for an aggregate limit (the "Aggregate Limit") and (ii) whether defense costs and other ALAE expenses were to be included within such Aggregate Limit. The Aggregate Limit terminated the insured's otherwise continuing obligation to reimburse certain losses and expenses. There was no evidence presented, and moreover it is both illogical and extremely unlikely, that occurrences sufficient to pierce the Aggregate Limit would have occurred in the nineteen

days prior to March 9, 2001. Thus, even if the 00 Policies premium was to have been applied to the 01 Policies until March 9, 2001, it would not affect the amount of this Award.

8. It is additionally found that Zurich informed Blue Dot through its Broker Lockton in July 2000 that because of loss experience, renewal of the 00 Policies would require a substantial increase in the Aggregate Limit. Had Blue Dot desired to find replacement coverage with another carrier effective 2/17/01, it was fully informed since July of 2000 of the reasons why the terms of the Aggregate Limit were going to change adversely and materially.

9. There is no ambiguity in the 01 Renewal Proposal (submitted as Exhibit 5) concerning the fact that pursuant to such renewal proposal the Aggregate Limit for the 01 policy year was not to include ALAE (and thus the Aggregate Limit for the 01 year as proposed would not include any defense costs).

10. When the coverage provided by the 01 Policies was bound effective 2/17/01, Blue Dot (through its broker Lockton) and Zurich intended to agree and did agree that upon renewal of the 00 Policies by the 01 Policies, the 01 Aggregate Limit would be $5,900,000 and would not include ALAE. Lockton had actual authority (and apparent authority) to bind Blue Dot with respect to the 01 Policies. Lockton did bind Blue Dot with respect to the 01 Policies.

11. The 01 Specifications were signed by Blue Dot on August 2, 2001. The 01 Specifications adopted and ratified the agreement that the 01 Aggregate Limit would be $5,900,000 and would not include ALAE.

12. In the event of any flaw in the form or content of any notice given to Blue Dot by Zurich in connection with the 01 Policies, or in the event of any ambiguity in any document issued or signed in connection with the 01 Policies (and there is no finding herein that there was any such flaw or ambiguity), it would be inequitable under the specific circumstances of this case, and contrary to the charge of this arbitration Panel, to reach a result contrary to the result reached in this Award.

WHEREFORE A MAJORITY OF THE PANEL ISSUES THIS FINAL AWARD AND ORDERS AS FOLLOWS:

**A.** Claimants Zurich American Insurance Company, American Guarantee and Liability Insurance Company and American Zurich Insurance Company are hereby granted this Final Award pursuant to which Respondent Blue Dot Services, Inc. is ordered and required to pay the total amount of **$3,904,763** to Zurich consisting of (a) damages from Blue Dot in the amount of $3,500,732; and (b) pre-award interest from Blue Dot in the amount of $404,031.

**B.** In the event that Blue Dot does not satisfy its obligation pursuant to this Final Award within 10 days of the Final Award date either by cash payment or partial cash payment and a Letter of Credit draw by Zurich, post-award interest shall accrue at a rate of nine percent per annum starting on the Final Award date.

C. All other claims, counter-claims, counter-demands, and requests for relief in connection with this arbitration are hereby denied.

D. The fees and expenses of the party-appointed arbitrators shall be the responsibility of the appointing party. Mr. White's fees and expenses and the fees and expenses of the American Arbitration Association and all other hearing costs shall be divided equally between the parties.

E. This Final Award does not close out the insurance program between Zurich and Blue Dot, which will continue to operate pursuant to its terms for all valuations subsequent to August 31, 2007.

F. This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

SO ORDERED BY A MAJORITY OF THE PANEL, EXCEPT AS TO ITEMS D AND E WHICH ARE ORDERED BY ALL MEMBERS OF THE PANEL.

Executed this 18th day of April, 2008:

Richard L. White

Michael S. Davis

John W. Borg, dissenting

C. All other claims, counter-claims, counter-demands, and requests for relief in connection with this arbitration are hereby denied.

D. The fees and expenses of the party-appointed arbitrators shall be the responsibility of the appointing party. Mr. White's fees and expenses and the fees and expenses of the American Arbitration Association and all other hearing costs shall be divided equally between the parties.

E. This Final Award does not close out the insurance program between Zurich and Blue Dot, which will continue to operate pursuant to its terms for all valuations subsequent to August 31, 2007.

F. This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

SO ORDERED BY A MAJORITY OF THE PANEL, EXCEPT AS TO ITEMS D AND E WHICH ARE ORDERED BY ALL MEMBERS OF THE PANEL.

Executed this 18 day of April, 2008:

Richard L. White

Michael S. Davis

John W. Borg, dissenting